IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MEGAN DETERLING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 1:26-cv-2941 |
| | § | |
| | § | |
| FLOCK GROUP INC. | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

# COMPLAINT

Plaintiff MEGAN DETERLING ("Plaintiff") complains of FLOCK GROUP INC. and for her cause of action would show the Court as follows:

## I.

## INTRODUCTION

1. This action seeks damages, attorneys' fees, expert fees, taxable costs of the court, pre- judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States and the State of Texas, including Title VII of the Civil Rights Act of 1964, as amended, and the Texas Commission on Human Rights Act, as amended.

## II.

## PARTIES

2. Plaintiff MEGAN DETERLING is a resident of Travis County, Texas.

3. Defendant FLOCK GROUP INC. is an entity that may be served with process by serving its Registered Agent, Registered Agents Inc., 5900 Balcones Drive Suite 100, Austin, TX, 78731.

## III.

## JURISDICTION, VENUE, AND ADMINISTRATIVE REMEDIES

4. This is a civil action seeking redress for violation of rights guaranteed to the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Texas Commission on Human Rights Act, as amended, in accordance with those statutes' provisions against sex discrimination and retaliation. More specifically, this action seeks monetary damages and all other appropriate relief to which Plaintiff is entitled to under the law on account of discrimination on the basis of sex and on account of retaliation for participating in activity protected under Title VII and the TCHRA.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367.

6. This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred substantially in Travis County, Texas.

7. Plaintiff filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division on or about August 27, 2025, within 180 days of her termination on July 31. 2025. Plaintiff received a notice of the right to sue Defendant from the U.S. Equal Employment Opportunity Commission dated July 27, 2026, which is within 90 days of the filing of this Complaint. Plaintiff files this Complaint within two years of her filing with the EEOC and Texas Workforce Commission Civil Rights Division, and so files within the statute of limitations for a claim under the Texas Commission on Human Rights Act, for which no notice of right to sue is required.

## IV.

## CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

## V.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

9. Plaintiff, Megan Deterling was heavily pursued and recruited by Defendant Flock Group Inc. ("Flock Safety" or "Flock"). Ms. Deterling began working a remote position in Texas for Flock Safety as a Major Accounts Manager in January 2024. Prior to working at Flock Safety, Ms. Deterling had over 15 years of sales experience, including niche experience in the public safety sector.

10. Ms. Deterling noticed gender-bias fairly early on in her employment. First, she was the only woman on the West Majors Team. Then, she noticed disparities between the number of accounts she was given compared to her male peers. Ms. Deterling voiced concerns about these issues, but her complaints were ignored. Ms. Deterling observed a "boys club" atmosphere, in which Ms. Deterling's male peers were often praised, given stronger accounts, given more opportunities for deals, allowed to cherry-pick their accounts, and allowed to keep their accounts past deadlines. Ms. Deterling was not given these opportunities, and in general, the rules were more strictly enforced on her.

11. The discriminatory mistreatment grew worse over time, especially as new leadership came in. Dan Pohl (male) was hired as Director of Law Enforcement Major Accounts in the Western Region in July 2024, and then Jim Fahey was hired as Senior Vice President of Law Enforcement in October 2024. Ms. Deterling voiced her concerns to Mr. Pohl about the lesser quantity and quality of her accounts, but he did not take any action to address the issue.

Thereafter, both Mr. Pohl and Mr. Fahey started treating Ms. Deterling with disdain, including ridiculing her without cause and trying to demean and humiliate her during team meetings.

12. In early November 2024, Mr. Fahey terminated Stacey Chadderton (female), who was the Director of the East Region. Mr. Fahey claimed that he terminated Ms. Chadderton because "she no longer fit in." Notably, this left only one woman on each regional team - Ms. Deterling in the West and another female employee in the East. Given the undeserved harsh criticism and disparities in treatment from her male peers, Ms. Deterling began to fear that she, too, would be pushed out of the Company without cause.

13. On November 15, 2024, Mr. Pohl emailed Ms. Deterling a review of her metrics. Ms. Deterling replied with a detailed email that again voiced her concern about the number and quality of accounts assigned to her as compared to her male peers. A few days later, Mr. Pohl met with Ms. Deterling about her email. He told Ms. Deterling that Mr. Fahey and Vice President Bob Koenig (male) had also reviewed the email, and they all agreed that the current account distribution was inequitable. Mr. Pohl promised that the Company would be redistributing territories in January 2025 to be more equitable.

14. Thereafter, the unjustified, gender-based mistreatment and ridicule continued. However, based on the promise that changes were coming, Ms. Deterling held out hope that the situation would get better.

15. On January 2, 2025, Mr. Pohl emailed Ms. Deterling the new territory assignments. The Company reassigned Ms. Deterling to territories outside of her home state of Texas, which would require her to leave her home state for any in-person meetings. Ms. Deterling emailed Mr. Pohl and asked about the reassignment, but he did not provide a clear answer as to why the Company did not assign Ms. Deterling to Texas. By contrast, Ms.

Deterling's male colleagues were either assigned to their home states or allowed to choose their own territories. Considering that the reassignment actually left Texas with no Major Account Executive, Ms. Deterling strongly suspected that the reassignment was made in an attempt to push her to quit. The reassignment was so clearly an attack on her that multiple peers reached out to Ms. Deterling to ask if she was okay, and one peer even warned her, "You have a target on your back."

16. On January 17, 2025, Mr. Fahey scheduled a one-on-one meeting with Ms. Deterling to discuss her 2024 performance. She expected to receive some positive feedback, because she had outperformed many of her male peers and even had the largest sale in her region for 2024, despite being given fewer and worse accounts than her male peers. However, instead of providing Ms. Deterling with any positive feedback, Mr. Fahey was overly harsh, insulting, and aggressive towards her. He insulted her work ethic and berated her for not "thinking outside the box." Overall, the negative feedback was subjective, not tied to metrics, and given with unnecessary aggression, insults, and demeaning comments.

17. Two days later, Ms. Deterling emailed a formal complaint to HR. Ms. Deterling then spoke with Kristina Kreamer (HR Manager) and expanded on the harassment, discrimination, and retaliation she had endured. Ms. Kreamer assured Ms. Deterling that an investigation would be opened.

18. On January 31, 2025, Ms. Kreamer (HR) spoke with Ms. Deterling again. On the call, Ms. Kreamer admitted that Ms. Deterling was the only person who was moved out of their home state and that at least one of Ms. Deterling's male peers was allowed to choose his territory. However, she claimed that the performance meeting and territory reassignments were just "poor management" and not discriminatory or retaliatory. Ms. Deterling asked why she

would be the only person who had been moved out of their home state, and Ms. Kreamer said management had told her that Ms. Deterling had been removed from Texas because she was "not strong enough." Ms. Deterling asked for metrics supporting the decision multiple times, but no one has provided any objective proof or explanation.

19. On February 6, 2025, Ms. Deterling met with her new supervisor, Sean Heieck (male). During the meeting, Ms. Deterling asked about the possibility of moving to Washington, and Mr. Heieck told her that he was unsure because the preference is for employees to live in their assigned territory. He also told Ms. Deterling that the territories she was assigned to might not generate enough opportunities for her to meet her quota, whereas Texas was expecting to receive significant funding. After the meeting, Ms. Deterling messaged Ms. Kreamer (HR) to add this information to her complaint. On February 20, 2025, Ms. Deterling emailed her leadership and Ms. Kreamer (HR) to amend her prior complaint and more fully outline the gender-based discrimination that she had endured. Ms. Kreamer and Ms. Deterling had a few calls following the email complaint to discuss Ms. Deterling’s concerns.

20. On March 13, 2025, HR closed the investigation and claimed to have not found sufficient evidence to support Ms. Deterling’s complaints. The harassment, discrimination, and retaliation continued. For example, the Company enforced deadlines on Ms. Deterling that her male peers were allowed to ignore. Additionally, the Company hired a man with no government technical/public safety sales experience to take over the Texas region.

21. Ms. Deterling continued to report further issues as they arose, but the Company refused to adequately address the situation. As a result, Ms. Deterling began suffering severe anxiety and began seeing a therapist.

22. On July 31, 2025, with no communication from her supervisors or HR, Ms. Deterling was completely logged out and removed from all of the programs she used at work. Her employment was immediately terminated, but Ms. Deterling was not informed that she had been terminated until August 1, 2025.

## VI.

## CAUSES OF ACTION

### COUNT ONE - DISCRIMINATION AND RETALIATION UNDER TITLE VII

23. Plaintiff filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission (EEOC) on or about August 27, 2025, within 180 days of her termination on July 31, 2025. Plaintiff received a notice of the right to sue Defendant from the United States Department of Justice, Civil Rights Division, dated July 27, 2026, which is within 90 days of the filing of this Complaint.

24. Plaintiff was an employee within the meaning of Title VII and belongs to a class protected under the statute, namely Plaintiff was discriminated against because of her gender and retaliated against for opposing gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e2(a)(1).

25. Defendant is an employer within the meaning of Title VII.

26. Title VII of the Civil Rights Act of 1964 states, in pertinent part, that, “(a) It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

27. Defendant intentionally discriminated against Plaintiff because of her gender and her opposition to Defendant's discriminatory conduct in its treatment of Plaintiff.

28. Defendant intentionally discriminated against Plaintiff because of her gender (female) in violation of Title VII by subjecting Plaintiff to the events described above, including but not limited to refusing to provide Plaintiff with the same opportunities as her male peers, and by terminating her employment. Defendant's decisions were motivated by Plaintiff's gender, and by Plaintiff's opposition to Defendant's discriminatory conduct. Plaintiff made a discrimination complaint and opposed a discriminatory practice by Defendant, and suffered adverse employment actions as a result. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.

**COUNT TWO - DISCRIMINATION AND RETALIATION UNDER THE TEXAS COMMISSION ON HUMAN RIGHTS ACT**

29. <u>Discrimination.</u> The conduct of the Defendant towards Plaintiff, through its agents, employees, managers, and supervisors, as set forth above, among other activities constitutes discrimination on the basis of gender, in direct violation of §21.001, et. seq., Labor Code, Vernon's Texas Codes Annotated, which states, in pertinent part, that:

> An employer commits an unlawful employment practice if...the employer...discriminates against an individual...or...classifies an employee...in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee.

30. Plaintiff's gender was a determining or motivating factor in Defendant's employment decisions regarding Plaintiff as described above, including the decision to subject Plaintiff to disparate terms and conditions of her employment and to terminate Plaintiff's

employment. Plaintiff's gender moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

31. Retaliation. In addition, Defendant retaliated against Plaintiff for making discrimination complaints, for participating in a discrimination investigation or otherwise opposing gender discrimination by the employer. See Texas Labor Code §21.055. Plaintiff's discrimination complaints were a determining or motivating factor in Defendant's employment decisions regarding Plaintiff, as described above, including the decision to terminate Plaintiff's employment.

## VII.

## DAMAGES

32. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

33. Defendant intentionally engaged in an unlawful employment practice by discriminating and retaliating against Plaintiff. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

34. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VIII.

## ATTORNEYS' FEES AND EXPERT FEES

35. A prevailing party may recover reasonable attorneys' and experts' fees under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act. Plaintiff seeks all reasonable and necessary attorneys' fees in this case from Defendant, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees and all costs associated with the prosecution of this action.

## IX.

## JURY DEMAND

36. Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;
2. The Court award Plaintiff damages as specified above;
3. The Court award Plaintiff reinstatement or, in the alternative, front pay.
4. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;
5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

THE LAW OFFICES OF KELL A. SIMON
501 North IH-35, Suite 111
Austin, Texas 78702
(512) 898-9662 Telephone
(512) 368-9144 Facsimile

/s/ Kell A. Simon
Kell A. Simon
State Bar No. 24060888
ATTORNEY FOR PLAINTIFF